```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


DAVID DRUTZ                    *
                               *
v.                             *    Civil Action No. WMN-10-3499
                               *
SCOTTSDALE INSURANCE COMPANY   *
                               *
     *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM

Before the Court are Plaintiff's and Defendant's Motions for Summary Judgment. ECF Nos. 21 & 22, respectively. The motions are fully briefed. Upon a review of the papers filed and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Plaintiff's motion should be granted while Defendant's motion should be denied.

## I. FACTUAL BACKGROUND

Plaintiff David Drutz brings this action seeking a declaratory judgment that water damage to his apartment building from an October 2009 incident was covered under an insurance policy issued by Defendant Scottsdale Insurance Company. For purposes of this action, the parties have stipulated to the following facts. See ECF No. 18. Plaintiff owns real property in Ocean City, Maryland. The building located on the property has three floors with toilets located on each floor. The drains from each of the toilets lead to a common drain which collects

all of the toilet water and carries it through the pipe to the lowest level, at which point the pipe penetrates the foundation and connects to the common sanitary sewer line.

On or about October, 4, 2009, a toilet located on the top floor of the building overflowed with water, causing damage to the building, fixtures, and contents. An investigation into why water had overflowed the toilet revealed two anomalies that contributed to the overflow. First, the drain pipe leading from and below the toilet had an obstruction approximately 5-8 feet downstream from the toilet and located between the second and third floors. The obstruction prevented water from draining out of the toilet.

The second anomaly was that a flapper within the toilet malfunctioned. The flapper controls the flow of water into the toilet bowl. It is designed to allow water to run into the tank once a toilet has been flushed, but is then designed to shut off the flow of water from the tank into the toilet bowl once the tank and bowl are filled. In this instance, rather than shutting off the flow of water, the flapper allowed water to continue flowing into the full toilet bowl. As a result of these two anomalies, clean water from the supply line overflowed the full toilet bowl and into the building.

Because of the water damage, the building could not be rented and underwent extensive repairs. The Plaintiff sustained

damage in three manners: damage to the building, damage to the contents, and loss of rents.  The parties have stipulated to the value of the repairs necessitated by the loss in the amount of $157,999,98.  <u>See</u> ECF No. 15.

At all times relevant to this action, Plaintiff and Defendant were parties to an all-risk insurance contract.  A claim was made on the insurer which was denied on several occasions.  The portion of the insurance policy relied on by the insurer to deny coverage states:

> B. Exclusions
>
>    1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
>                        . . .
>
>       g. Water
>
>          (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
>
>          (2) Mudslide or mudflow;
>
>          **(3) Water that backs up or overflows from a sewer, drain or sump.**[1]

---

[1] On three separate occasions, Defendant denied the Plaintiff's claim on the basis that a toilet is a drain and, because water overflowed from that "drain," the damage thus falls within the policy's water exclusion:

> The damage was not the result of a covered cause of loss. Overflow from a drain (the toilet) is

ECF No. 1-1 at 62 (emphasis added).

## II. STANDARD OF REVIEW

As noted above, the parties have stipulated to all facts and filed cross-motions for summary judgment.  Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).  When both parties file motions for summary judgment, the court applies the same standards of review.  Taft Broad. Co. v. United States, 929 F.2d

---

> specifically excluded by the policy. (letter dated November 3, 2009);
>
> . . . the damage was not the result of a covered cause of loss. Overflow from a toilet drain is specifically excluded by the policy. (letter dated October 11, 2010);
>
> A toilet is a drain. It drains waste into the sewer line . . . the damage was not the result of a covered cause of loss.  Overflow from a toilet drain is specifically excluded by the policy.  (letter dated November 11, 2010).

ECF No. 21, Exs. 4, 5, and 6.

4

240, 248 (6th Cir. 1991). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985).

## III. DISCUSSION

Under Maryland law, the primary purpose "in construing insurance contracts, like all contracts, is to ascertain and give effect to the intention of the parties at the time of contracting." Catalina Enters. V. Hartford Fire. Ins. Co., 67 F.3d 63, 65 (4th Cir. 2005) (citing Aragona v. St. Paul Fire and Marine Ins. Co., 378 A.2d 1346, 1348 (Md. 1977)). If the language in a contract is clear and unambiguous, then the contract must be enforced as written and the language "may not yield to what the parties later say they meant." Sallie v. Tax Sale Investors, Inc., 814 A.2d 572, 578 (Md. Ct. Spec. App. 2001) (citing Bd. of Trs. of State Colls. v. Sherman, 373 A.2d 626, 629 (Md. 1977)). Maryland courts "interpret insurance policies as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." United Capital Ins. Co. v. Kapiloff, 155 F.3d 488, 495 (4th Cir. 1998) (citing Collier v. MD-Individual Practice Ass'n, 607 A.2d 537, 539 (Md. 1992)). Further, an insurer has the burden of

5

establishing that the policy excludes a particular loss.  Nat'l Elec. Mfrs. Assoc. v. Gulf Underwriters Ins. Co., 162 F.3d 821, 824 (4th Cir. 1998).

An "all-risk" policy, like the policy at issue here, "creates coverage of a type not ordinarily present under other types of insurance, and recovery is allowed for fortuitous losses unless loss is excluded by a specific policy provision; the effect of such a policy is to broaden coverage and a fortuitous event is one which, to the knowledge of the parties, is dependent upon chance." Couch on Insurance 3d § 148:50 (1998).  Notwithstanding the presence of an all-risk provision in an insurance policy, the loss will not be covered if it comes within any specific exclusion contained in the policy. Id. at § 148:68.

The insurance contract in this case excludes from coverage damage caused by water that "backs up or overflows from a sewer, drain, or sump."  In adherence to Maryland's principles governing contract interpretation, this court will accord the words in this exclusion their usual and everyday meaning.  The definition of a "drain" is: a means (such as a pipe) by which usually liquid matter is drained.  Merriam Webster Dictionary. Relying on this definition, common sense dictates that a toilet

is not a drain.[2]  The word "toilet" is defined as a "bathroom fixture consisting of a bowl, usually with a detachable, hinged seat and lid, and a device for flushing with water, used for defecation and urination."  Id.  The word "from" is often used to specify a starting point in spatial movement.  Id.

Plainly, in order for the exclusion to properly apply to the facts of this case, the water that caused the damage must have started in a drain and then later exited that drain.  That is not what happened here.  Instead, due to the drain's blockage between the second and third floors, clean water from the supply line was unable to enter the drain and simply filled the toilet bowl until it eventually overflowed.  The water that overflowed the toilet bowl and caused the subsequent damage never made it into the drain and thus could not have "backed up or overflowed from a drain."  Consequently, because the damage was caused by water that did not "back up or overflow from a drain," the policy exclusion does not apply and the loss incurred by the plaintiff is a covered form of loss under the plain language of the policy.

---

[2] Defendant has backed away from its original conflation of "drain" and "toilet" by stating that the denials were based on water having backed up and overflowed from the drain leading from the toilet and that the plaintiff's interpretation of these clauses was an unfair reading of the letters in their entirety. ECF No. 22 at 11.  The Court would concur with Plaintiff's reading of the denial letter, notwithstanding Defendant's current retreat from that position.

7

The cases cited by the insured support the Court's conclusion that the interpretation of the policy exclusion at issue plainly is limited to damage caused by water that has entered a drain and then is subsequently forced out from or through that drain.  In both Hallsted v. Blue Mountain Convalescent Ctr., Inc. 595 P.2d 574 (Wash. Ct. App. 1979) and Haines v. United Sec. Ins. Co. 602 P.2d 901 (Colo. Ct. App. 1979), insurance policies excluded from coverage damage caused by water that "backs up through sewers or drains."  In Hallsted, the sewer under the street in front of plaintiff's home became clogged.  As a result, the sewage backed up through the sewer pipes to plaintiff's home and ultimately flowed out of the commode in her second floor bathroom. Hallsted, 595 P.2d at 574. Similarly in Haines, heavy rainfall entered a sewer line being constructed near the insured's house and as a result, excessive pressure in the line caused raw sewage to be discharged into the insured's basement.  Haines, 602 P.2d at 902.  In both cases, the courts held the policy exclusion applicable because the damage was caused by water that was forced back up through a sewer or drain.

The holding in Old Dominion Ins. Co. v. Elysee, Inc., 601 So. 2d 1243 (Fla. Dist. Ct. App. 1992) adheres to this same line of reasoning.  In that case, a blockage formed in the main sewer line located outside the insured's premises.  When other stores

which were connected to the main sewer line used their toilets or sinks, the water was discharged onto insured's premises. Id. at 1244. The insured had an insurance policy that excluded from coverage damage caused by water that "backs up from a sewer or drain." Although the case turned on ascertaining the precise definition of "sewer" and "drain", the water that discharged from the sewer and onto the insured's premises was easily classified by the court as water that had backed up from a sewer or drain. Id. at 1245.

The cases cited by Defendant lead to the same conclusion. In Penn-American Ins. Co. v. Mike's Tailoring, 22 Cal. Rptr. 3d 918 (Cal. Ct. App. 2005), the insurance policy excluded from coverage damage caused by water that "backs up from a sewer or drain." A blockage in a sewer pipe servicing the insured's premises constricted the flow of water and sewage. The pressure of the accumulating water and sewage caused the plastic cap on the clean-out pipe to fail, and the contents of the sewer line were forced up the clean-out pipe into the insured's basement. Id. at 921. The court concluded that the water and sewage had been forced back up from the sewer and thus the damage was of the excluded type.

Defendant relies most heavily on Front Row Theatre v. American Manufacturer's Mut. Ins., 18 F.3d 1343 (6th Cir. 1994), for its contention that the damage to the insured's premises was

9

caused by water that had "backed up from a sewer or drain." The insured's premises in that case, a theater, was surrounded by a parking lot of higher elevation. The theatre was encircled by an upper and lower ring of manholes in the parking lot. Water from the parking lot drained into the upper manholes and was then carried, via underground piping, to the lower set of manholes. The water is then drained away from the theatre. A 50% blockage in one of the drainage pipes caused water from a rainstorm to overflow the system. Id. at 1345. The overflow was so severe that it caused water to run through the theater's front doors, inflicting substantial damage upon the theater.

The theater was insured under an all-risk insurance policy that provided coverage for water damage but explicitly excluded coverage for damage caused by floods. The exclusion further provided that loss due to flooding is excluded from coverage regardless of any other cause or event that contributes concurrently or in any sequence to the loss. The exclusion for flood damage contained an exemption, however, that provided for coverage if the damage was caused by water which had "backed up from a sewer or drainage system." Id. Thus, unlike the case at bar, damage caused by water that "backed up from a sewer or drain" was a covered form of loss under the policy.

The court in Front Row explicitly recognized two causes of the water damage incurred by the theater. The damage was

10

caused, in part, by water that had entered the top manholes and then, due to the blockage in the system, was unable to continue its natural flow to the underground pipes and instead exited the lower manholes and into the building.  The court categorized this water as having "backed up from a sewer or drain."  The damage to the theater was also caused, in part, by surface water, water that was never able to enter the system due to the blockage and instead flowed over the manholes and down into the theater.  The damage caused by the surface water constituted flood damage under the policy.  Consequently, the theater's damage was caused in part by a covered form of loss under the policy (damage caused by water that backed up from a sewer or drain) and in part by an excluded form of loss (damage caused by flooding).  Id. at 1346.  Pursuant to the policy language that excludes from coverage loss caused by flooding, despite the existence of a second, covered cause, the court held that the damage to the theater was not a covered form of loss.  Id. at 1347.

In the present case, the blockage that occurred in the drain between the second and third floors prevented clean water from the supply line from entering the drain.  In effect, the blockage caused the drain and the clean water from the supply line to become backed up.  Defendant erroneously relies on dicta in Front Row to conclude that the court characterized backed up

11

water as water that had backed up from a sewer or drain.  As explicitly stated by the court in Front Row, however, the policy language "water that backs up from a sewer or drain" does not include within its meaning water that is unable to enter a drain or sewer (water that is backed up) due to a blockage, but instead only refers to water that, after having entered a drain or sewer, is diverted back up out of it.[3]  Id. at 1348.  The damage in the case at bar was caused by water that could not initially enter the drain and, therefore, that water did not "back up or overflow from a drain."  Consequently, the policy's water exclusion does not apply and the loss incurred by Plaintiff is a covered form of loss under the plain language of the policy.

---

[3] The insurer similarly urges this court to adopt the expansive definition of "back up" articulated in dicta in Horizon III Real Estate v. Hartford Fire Ins. Co. 186 F. Supp. 2d 1000 (D. Minn. 2002).  In Horizon, the central holding turned on the issue of the precise definition of "rain". In a footnote, the court included within the definition of "backed up" water that is prevented from entering the sewer or drain and not simply water that has reversed its flow inside the sewer or drain. Id. at 1009, n.1.  This court finds that over-inclusive definition unpersuasive.

**IV. CONCLUSION**

For these reasons, Plaintiff's motion for summary judgment will be granted and Defendant's cross-motion for summary judgment will be denied.  A separate order will issue.

                                    /s/
                              _____

                              William M. Nickerson
                              Senior United States District Judge


DATED: February 28, 2012